## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

| | | |
|---|---|---|
| **BARBARA JEAN BOWERS, M.D.** | \| | |
| | \| | **CIVIL ACTION** |
| **Plaintiff** | \| | |
| | \| | |
| **v.** | \| | |
| **THE OPHTHALMOLOGY** | \| | <u>5:12CV-34-R</u> |
| **GROUP LLP.** | \| | |
| | \| | |
| | \| | |
| **Defendant** | \| | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW THE PLAINTIFF, BARBARA JEAN BOWERS,

M.D., hereinafter "Dr. Bowers" requesting trial by jury and for her

complaint against The Ophthalmology Group LLP, hereinafter the

Defendant states as follows:

## I.  INTRODUCTION

1.

In this action Barbara Jean Bowers M.D. seeks equitable relief, legal

damages, both compensatory and punitive, statutory damages including front

and back pay and lost benefits to remedy intentional gender discrimination

in her discharge from the Defendant, her wrongful termination against

written contract and public policy and the retaliation visited upon her by the

Defendant in response to Dr. Bowers complaining to the Defendant about

gender discrimination, along with the misappropriation of her name for

Defendant's commercial advantage. A substantial part of the acts and

omissions complained of herein occurred in Paducah, Kentucky, McCracken

County.

## II. JURISDICTION

### 2.

Federal Question Subject Matter Jurisdiction is vested in this Court

pursuant to 28 U.S.C. § 1331, and 1343(4) and 42 U.S.C. § 2000e-5(f)(3), as

this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e  *et. seq.,* and the Civil Rights Act of 1991, 42 U.S.C. 1981a  *et. seq.*

28 U.S.C. § 1367 provides for supplemental jurisdiction over Plaintiff's state

law claims arising under KRS 344.010  *et. seq.* and the common law.

Jurisdiction for the award of costs and attorneys fees arises under FRCP

54(d), 28 U.S.C § 1920 and KRS 344.450, and 42 U.S.C. §  2000e-5(k) and

KRS 344.450 thru 28 U.S.C. § 1367.

### 3.

Personal Jurisdiction is vested over the Ophthalmology Group LLP as

it is a domestic partnership organized and registered under the laws of the

Commonwealth of Kentucky and has its principle place of business in

Paducah Kentucky, McCracken County, Kentucky and thus it is subject to

the jurisdiction of the Court via the traditional basis of continuous presence and domicile within the state.

## III. VENUE

4.

Venue is conferred via 28 U.S.C. § 1391(b) (1) & (2) and 42 U.S.C. § 2000e-5(f)(3) and LR 3.2(a)(1).

## IV.

## ADMINISTRATIVE REMEDIES EXHAUSTED

5.

Dr. Bowers has exhausted all administrative remedies with respect to her claims under Title VII by having timely filed on October 1st 2010 against the Defendant both state claims and federal charges of gender discrimination related to her discharge from the Defendant, and retaliation for complaining about gender discrimination to the Defendant.  Dr. Bowers filed her claims and charges with the Kentucky Commission on Human Rights, hereinafter KCHR, and concomitantly with the United States Equal Employment Opportunity Commission, Louisville Division, respectively. (EEOC Charge 24G-2011-00019).

6.

KCHR handled Dr. Bowers' claims and charges pursuant to a work sharing agreement with the EEOC, found the claims and charges to have been timely filed, and ultimately dismissed Dr. Bowers' claim of discrimination **without prejudice** having denied her a requested adversarial hearing and having declined to make a finding of no probable cause.  Dr. Bowers' state claim and federal charge of retaliation were not addressed in KCHR's dismissal.

7.

On December 5th 2011, the EEOC closed its file on Dr. Bowers' identical companion EEOC charge #24G-2011-00019, charging gender discrimination in discharging Dr. Bowers, and retaliation against Dr. Bowers by the Defendant for Dr. Bowers complaining to Defendant about gender discrimination in her discharge, and dispatched via First Class United States Mail to Dr. Bowers, a right to sue letter on her charges of gender discrimination and retaliation for complaining of gender discrimination. That right to sue letter is attached as Exhibit A to this complaint.

8.

Dr. Bowers received the EEOC right to sue letter in her personal residence United States mail box on December 7th 2011, less than 90 days prior to the commencement of this action.

9.

Dr. Bowers has satisfied all conditions precedent to bringing this action and has timely commenced this action within 90 days of receiving the EEOC right to sue letter.

## V. PARTIES

10.

The Plaintiff, Barbara Jean Bowers, M.D.  is in a protected class in that she is a female natural person and is a citizen of the Commonwealth of Kentucky.  She resides and is domiciled in Paducah, Kentucky, McCracken County.

11.

The Defendant, The Ophthalmology Group LLP, a domestic partnership is organized within the Commonwealth of Kentucky according to the laws of Kentucky and maintains a principle place of business in Paducah, Kentucky, McCracken County.

12.

The Defendant may be served with process through its registered

agent, Theodore Borodofsky, Jr. M.D., at 1903 Boadway, Paducah,

Kentucky 42001.

## VI. GENDER DISCRIMINATION IN DR. BARBARA BOWERS'
## EMPLOYMENT DISCHARGE & WRONGFUL TERMINATION

13.

The Defendant is an employer within the meaning of Title VII of the

Civil Rights Act of 1964 in that it employed 15 or more fulltime employees

for each working day in each of twenty or more calendar weeks during the

current or preceding calendar year and has at all times mentioned herein

been engaged in an industry affecting commerce.

14.

During 2009 and 2010 Defendant employed 15 or more fulltime

employees for each working day in each of twenty or more calendar weeks.

15.

The Defendant is an employer within the meaning of the Kentucky

Civil Rights Act, KRS 344.010 *et. seq.* in that it employed 8 or more

fulltime employees for each working day in each of twenty or more calendar

weeks during the current or preceding calendar year and has at all times mentioned herein been engaged in an industry affecting commerce.

16.

The American Board of Ophthalmology certified Dr. Bowers as a Board Certified Ophthalmologist in or about May 1999.

17.

Defendant hired Dr. Bowers as a salaried employee physician later in 1999.

18.

Dr. Bowers recertified in 2009 by taking the Board Examinations again as required and remains a Board Certified Ophthalmologist to this day.

19.

Dr. Bowers has maintained a disciplinary free medical practice since her first licensure in 1992, and was at the time of her discharge from The Ophthalmology Group LLP, and remains today eminently qualified to perform the job from which she was terminated by the Defendant.

20.

In 2002, Dr. Bowers was asked by the all male partners of the Defendant to buy into the partnership.

21.

Prior to 2002, there had never been a female partner of the Defendant.

22.

In 2002, Dr. Bowers purchased a partnership interest in the Defendant in good faith.

23.

Upon buying into the partnership, Dr. Bowers soon learned that each male partner of the Defendant had a particular area of exclusive supervisory responsibility within the practice.

24.

For example, one male partner was in charge of staffing issues, one male partner was in charge of the surgery center issues, one male partner was in charge of the financial issues, one male partner was in charge of the physical plant issues, and one male partner was in charge of the retinal practice issues.

25.

Dr. Bowers was not allowed to be in charge of any common area of the practice.

26.

Despite purchasing what she was led to believe was a substantial share of equity and control,  Dr. Bowers was never assigned an area of responsibility and control within the practice.

27.

When Roland Myers, the partner in charge of staffing retired in 2005, Dr. Bowers requested of the remaining partners to be placed in charge of that area of responsibility.

28.

The male partners denied Dr. Bowers' request in 2005 to be placed in charge of staffing.

29.

Joy Woodford, the office manager, told Dr. Bowers that it was the feeling of the partners at the time as communicated to her by the partners, that as a woman, Dr. Bowers should not be placed in charge of an all female staff.

30.

Instead control over staffing was assigned to Ted Borodofsky in or about 2005, another male partner who already had another area of responsibility.

31.

Dr. Bowers was once again left without any official responsibility and control over any common area of the practice.

32.

Later, Jeff Taylor, a more junior male partner who hired in after Dr. Bowers as an employee physician was handed the reigns of staffing issues by Ted Borodofsky, the male partner who had acquired them from Roland Myers, the previously retiring partner.

33.

During the seven years Dr. Bowers practiced in the group under her partnership agreement, Dr. Bowers was never consulted, advised, nor allowed any say or vote in the transfer of hundreds of thousands of dollars of bonus money to employees.

34.

During the seven years Dr. Bowers practiced in the group under the partnership agreement, Dr. Bowers was never consulted advised nor allowed to have any input into wages, salaries and raises for staff members.

35.

Despite being one of only two members of Defendant qualified to perform specialty LASIK surgery, despite being the most experienced

refractive lens cataract surgeon in the group, and despite being the only surgeon in the group qualified to implant refractive phakic intraocular lenses,  the partnership declined to allow Dr. Bowers to concentrate her practice on cataract and refractive procedures, dictating that she perform general ophthalmology services.

36.

On the other hand, Dr. Ron Tilford, an ophthalmologist and male member of the Defendant with no fellowship training in retinal ophthalmology was allowed to practice as a retina specialist without being required to perform general ophthalmology services.

37.

The male partners informed Dr. Bowers that because the majority of them practiced general ophthalmology, Dr. Bowers must too practice general ophthalmology instead of concentrating on her specialties.

38.

Although her revenue production exceeded that of all but one other partner during certain time periods, Dr. Bowers was denied by the Defendant the ability to control her own practice to maximize the efficiency of her time.

39.

Dr. Bowers birthed two children during her years of practice with the Ophthalmology Group LLP.

40.

The year following the birth of her first child, 2005 was her highest producing year.

41.

While pregnant with her second child, Dr. Borodofsky, the managing partner said to Dr. Bowers, "My son-in-law is an ophthalmologist and my daughter is a mother.  They are both fulltime jobs.  Maybe you should choose."

42.

The statement in paragraph #41 above was both unwelcomed by and offensive to Dr. Bowers.

43.

At the time Dr. Borodofsky made the statement in paragraph #41 above, Dr. Bowers was one of the two top revenue producers in the Defendant.

44.

Although the partnership agreement required monthly meetings, entity formalities were  rarely observed despite continuing protests from Dr. Bowers.

45.

Dr. Bowers' repeated requests to the partners for adherence to the contractually required protocol were routinely ignored.

46.

When male partner, Dr. Carl Baker requested in 2006 a physician to assist him in his practice due to increased caseload, the partnership hired an ophthalmologist; i.e, Dr. Ron Tilford.

47.

On information and belief, Dr. Ron Tilford maintained and still maintains an additional ophthalmology practice in Atlanta, Georgia which fact was never disclosed to Dr. Bowers before her discharged.

48.

When Dr. Bowers made a request for an optometrist to assist her due to increased caseload, the request was denied and Dr. Bowers was instructed by the Defendant to scale back her practice.

49.

During Dr. Bowers' tenure with the Defendant under her partnership agreement, male partners Carl Baker and Ron Tilford both engaged in activities away from Paducah calculated to produce revenue from the rendering of Ophthalmology services without any disclosure to, or input, knowledge, or approval from Dr. Bowers.

50.

During Dr. Bowers' tenure under her partnership agreement, one of the male partners in the group engaged in inappropriate contacts with female staff employees creating a hostile working environment within the ranks of the office employees and increasing liability to the Defendant.

51.

Dr. Bowers both observed and repetitively heard complaints from other female employees that the same male partner referenced in paragraph #50 above, routinely engaged in sexually charged banter and innuendo with female staff members at the workplace.

52.

The same male partner referenced in paragraph #50 above, after meeting with and consultation with the other partners and the partnership attorneys and having a full and fair forum to explain his actions and conduct

was allowed by the Defendant to stay in the practice and avoid expulsion in return for a promise to cease inappropriate conduct  and to indemnify the other partners for his improprieties.

53.

A formal investigation, consultation and disposition,  including full participation by the same male partner referenced in paragraph #50 above, were conducted to deal with his improprieties which had created substantial risks of financial loss to the Defendant.

54.

Later, the male partners without the knowledge or consent of Dr. Bowers ultimately decided to not require any remedial action or indemnification from the offending male partner referenced in paragraph #50 above.

55.

The offending male partner in paragraph #50  above like Dr. Bowers was routinely involved in the day to day hands on service rendering operations of the practice by evaluating and treating patients and like Dr. Bowers rendering LASIK and cataract surgeries.

56.

The offending male partner referenced in paragraph #50 above, was like Dr. Bowers one of two members of defendant qualified to perform LASIK surgery.

57.

The male partners routinely made scheduling changes  to accommodate their golf outings and football games and other personal matters with complete cooperation and coordination by the office administrator, Joy Woodford.

58.

When Dr. Bowers had to make scheduling changes for personal matters Joy Woodford, the office administrator routinely sent out demeaning and belittling memorandums to the office staff causing ill will and a hostile work environment.

59.

Following the closure of the issues surrounding the male partners' improprieties as mentioned in paragraph #50  above,  Dr. Bowers repeatedly brought scheduling issues concerning her unexplained dwindling patient load to the attention of the partners and the office manager on a number of occasions but her inquiries were routinely ignored.

60.

At the same time Dr. Bowers routinely met patients on the street who complained that they were being denied access to Dr. Bowers without her consent by the Defendant.

61.

On February 25th 2010, Dr. Bowers and her husband filed a non-consumer bankruptcy due to insolvency arising from a failed business venture unrelated to her medical practice.

62.

Prior to February 25th 2010, Dr. Bowers had notified the Defendant of her insolvency and that the bankruptcy filing was imminent.

63.

On March 5th 2010, Dr. Bowers was informed by a male partner that that the male partners had met during the evening of March 4th 2010 without Dr. Bowers' participation, knowledge or consent and had agreed without her participation to terminate Dr. Bowers association with the Group finally effective April 4th 2010 per stipulation of the written partnership agreement.

64.

Shortly thereafter, Dr. Bowers received a written communication from the Defendant informing Dr. Bowers that she would be terminated effective April 4th 2010 due to her bankruptcy.

65.

No discreet reasons for the termination of Dr. Bowers other than her bankruptcy were articulated in the written communication referenced in paragraph #64 above.

66.

Despite the final termination date of April 4th 2010 stated by the Defendant,  Dr. Bowers was physically locked out of her practice on the afternoon of March 5th 2010, all the locks on the building changed.

67.

Also, either on or immediately following March 5th 2010, the Defendant contacted Dr. Bowers' patients scheduled for surgery on the following business day at a different location not under control of the Ophthalmology Group LLP and cancelled their surgeries without Dr. Bowers consent and attempted to reschedule them with the male partners.

68.

The Ophthalmology Group LLP falsely told the patients on March 5th 2010, and shortly thereafter that Dr. Bowers had abandoned the Defendant and could not be located.

69.

Despite locking Dr. Bowers out of her practice on March 5th, 2010 and cancelling her patients, the Defendant kept Dr. Bowers name on the marquee on the front of the building for approximately another month.

70.

On March 12th 2010, Dr. Bowers commenced an adversary proceeding in the bankruptcy court against the Ophthalmology Group LLP for relief from the actions of the Defendant based upon the Defendant's stated reason that it terminated Dr. Bowers due to her bankruptcy filing, an action proscribed by bankruptcy law, 11 U.S.C. § 525.

71.

The Defendant defended the action claiming there were other reasons for terminating Dr. Bowers.

72.

The additional reasons stated by the Defendant for terminating Dr.

Bowers are pretext and have already been debunked in large part by the male

partners'own testimony in the adversary proceeding.

## VII.  RETALIATION

73.

In late August 2010, Dr. Bowers advised the Defendant in writing that

Dr. Bowers would be making a gender discrimination claim against the

Defendant in accordance with the Defendant's belated claims that reasons

other than the bankruptcy prompted her discharge.

74.

In what amounts to an admitted retaliation, the Defendant filed suit

against Dr. Bowers on September 8th 2010 in McCracken Circuit Court

before her time to file her administrative charges had expired seeking a

declaratory judgment on Dr. Bowers' threatened gender discrimination

claim, seeking damages including punitive damages, and seeking to deny her

statutory and constitutional rights to a jury trial on the discrimination issues.

75.

Despite Defendant's unlawful and egregious conduct and its

continuing efforts to interfere with her fledgling new practice post

termination, Dr. Bowers successfully mitigated some of her damages by successfully launching her own ophthalmology practice and continuing to work.

76.

On information and belief, the Defendant has now in 2012 filled Dr. Bowers' vacated physician position with a male physician employee, Dr. Landon Meeks, by paying him a periodic stipend and contracting with him to join the practice as an employee upon completion of his ophthalmology residency.

## VIII. MISAPPROPRIATION OF NAME

77.

After locking Dr. Bowers out of her practice, the Defendant later in the spring after April 4th 2010, misappropriated the name of Dr. Bowers in its July 2010 AT & T yellow pages advertisement for the purpose of drawing clients wanting to see Dr. Bowers into the practice for the financial gain of itself and to the financial detriment of Dr. Bowers.

## IX. CLAIMS FOR RELIEF

### Count I

### GENDER DISCRIMINATION TITLE VII

### (UNLAWFUL TERMINATION)

78.

The Plaintiff reasserts paragraphs # 1 thru 72 and 75 and 76  above as though fully restated herein.

79.

The Defendant's actions against Dr. Bowers on March 4th 2010 and thereafter related to terminating her were willful and intentional, with malice and in reckless disregard for Dr. Bowers federally protected rights and were motivated by Dr. Bowers' gender and constitute an impermissible gender discrimination discharge as proscribed by Title VII of the Civil Rights Act of 1964.

80.

The Defendant's gender related discriminatory termination of Dr. Bowers is proscribed by 42 U.S.C. § 2000e-(2)(a) and caused Dr. Bowers loss of pay, lost benefits, mental distress and suffering and entitles Dr. Bowers to back pay, front pay, lost benefits compensatory and punitive damages pursuant to 42 U.S.C  § 2000e-5(g) and 42 U.S.C. § 1981a.

**Count II**

**WRONGFUL TERMINATION IN BREACH OF CONTRACT OR IN THE ALTERNATIVE  VIOLATION OF PUBLIC POLICY**

81.

The Plaintiff reasserts paragraphs #1 thru 72, and 75 and 76  above as though fully restated herein.

82.

The Defendant's actions against Dr. Bowers on March 4th 2010 and thereafter and before the final discharge date of April 4th 2010 were willful and intentional, with malice and in violation of the partnership agreement and in reckless disregard for Dr. Bowers federally and state protected rights and motivated by Dr. Bowers' exercise of her federally and state guaranteed statutory rights and constitute an impermissible and wrongful termination in violation of her contract or in the alternative as proscribed by public policy under the Kentucky common law.

83.

The Defendant's wrongful acts occurring on and after March 4th 2010, related to terminating Dr. Bowers caused Dr. Bowers lost pay and lost benefits along with mental distress and suffering and entitle Dr. Bowers to

special damages, compensatory and punitive damages as allowed by Kentucky common law.

## Count III

## GENDER DISCRIMINATION KRS 344.040

## (UNLAWFUL GENDER RELATED TERMINATION)

84.

The Plaintiff reasserts paragraphs # 1 thru 72 and 75 and 76 above as though fully restated herein.

85.

The Defendant's actions against Dr. Bowers on March 4th 2010 and thereafter related to her termination were willful and intentional, with malice and in reckless disregard for Dr. Bowers federally and state protected rights and were motivated by Dr. Bowers' gender and constitute an impermissible gender discrimination discharge as proscribed by KRS 344.040.

86.

The Defendant's actions against Dr. Bowers occurring on and after March 4th 2010, related to terminating Dr. Bowers caused Dr. Bowers lost pay and lost benefits along with mental distress and suffering and entitle Dr. Bowers to compensatory damages under KRS 344.450.

**Count IV**

**TITLE VII**

**RETALIATION FOR COMPLAINING**

**ABOUT GENDER DISCRIMINATION**

87.

The Plaintiff reasserts paragraphs # 1 thru 76 above as though fully restated herein.

88.

The Defendant's wrongful commencement of a lawsuit against Dr. Bowers in McCracken Circuit Court on September 8th 2010, attempting to deprive her of her statutory and constitutional rights to a jury trial on discrimination issues was willful, intentional, with malice and in reckless disregard for Dr. Bowers federally protected rights and was as stated in Defendant's complaint  motivated by Dr. Bowers' complaining of gender discrimination to the Defendant.

89.

The Defendant's wrongful commencement of the McCracken Court Civil Action was willful, intentional, with malice and in reckless disregard for Dr. Bowers federally protected rights proscribed by 42 U.S.C. § 2000e-

(3)(a), and caused Dr. Bowers mental distress and suffering and entitles Dr.

Bowers to compensatory and punitive damages under 42 U.S.C. § 1981a.

## Count V

## KRS 344.280

## RETALIATION FOR COMPLAINING

## ABOUT GENDER DISCRIMINATION

### 90.

The Plaintiff reasserts paragraphs # 1 thru 76 above as though fully

restated herein.

### 91.

The Defendant's wrongful commencement of a lawsuit against Dr.

Bowers in McCracken Circuit Court on September 8th 2010, attempting to

deprive her of her statutory and constitutional rights was willful, intentional,

with malice and in reckless disregard for Dr. Bowers federally and state

protected rights and was as stated in Defendant's complaint  motivated by

Dr. Bowers' complaining of gender discrimination to the Defendant and is

proscribed by KRS 344.280.

### 92.

The Defendant's wrongful commencement of a lawsuit against Dr.

Bowers in McCracken Circuit Court on September 8th 2010, was willful and

intentional, with malice and in reckless disregard for Dr. Bowers federally

and state protected rights and caused Dr. Bowers mental distress and

suffering and entitles Dr. Bowers to compensatory damages under KRS

344.450.

## Count VI

## MISAPPROPRIATION OF NAME BY DEFENDANT FOR
## ITS COMMERCIAL ADVANTAGE

93.

The Plaintiff reasserts paragraphs #1 thru 77 above as though fully

restated herein.

94.

The Defendant's use of Dr. Bowers name for its economic advantage

after it fired her including the use of her name in its 2010-2011 AT&T

yellow pages advertisement and without her consent was willful intentional

conduct, with malice and was motivated by a desire to obtain an unfair

economic advantage and is proscribed by the common law, thereby entitling

Dr. Bowers to special compensatory and punitive damages.

## COUNT VII

## FEDERAL FEE SHIFTING

## (COST & FEES FOR EXPERTS & ATTORNEYS)

### 95.

The Plaintiff reasserts paragraphs #1 thru 77 above as though fully restated herein.

### 96.

Dr. Bowers states a separate claim for costs of this litigation including attorney fees and expert fees under FRCP 54(d), 28 U.S.C § 1920 and 42 U.S.C. §  2000e-5(k).

## COUNT VIII

## STATE FEE SHIFTING

## (COST & FEES FOR ATTORNEYS)

### 97.

The Plaintiff reasserts paragraphs #1 thru 77 above as though fully restated herein.

### 98.

Dr. Bowers states a separate claim for costs of this litigation including attorney fees as allowed under KRS 344.450 thru 28 U.S.C. § 1367.

## COUNT IX

## PREJUDGMENT & POST JUDGMENT INTEREST

### 99.

Dr. Bowers states a separate claim for prejudgment and post judgment interest as allowed by law.

## COUNT X

## EQUITABLE RELIEF

## INJUNCTION

### 100.

The Plaintiff reasserts paragraphs #1 thru 77 above as though fully restated herein.

### 101.

The Defendant's wrongful commencement of a civil action in McCracken Circuit Court on September 8th 2010, seeking to deny Dr. Bowers her statutory and constitutional rights to a jury trial on the issues of discrimination was willful and intentional, with malice and in reckless disregard for Dr. Bowers federally and state protected rights and motivated as stated in the complaint by Dr. Bowers' complaint of gender discrimination to the Defendant.

102.

Thus, this Court in equity should issue an injunction compelling the Defendant to dismiss its action for declaratory judgment in the state court and/or in the alternative enjoin proceedings in the state court on Defendant's declaratory judgment action.

## X.  PRAYER

WHEREFORE, the Plaintiff requests that she be afforded the following relief:

a.      That the Plaintiff receive from the Defendant both legal damages and equitable relief, including statutory, compensatory, and punitive damages including but not limited to back pay, front pay, lost benefits, incidental damages and a declaration that the Ophthalmology Group LLP engaged in discriminatory employment practices.

b.      statutory damages as allowed by 42 U.S.C. § 2000e-5(g).

c.      compensatory damages as allowed by 42 U.S.C. § 1981a.

d.      punitive damages as allowed by 42 U.S.C. § 1981a.

e.      compensatory damages as allowed by KRS 344.450.

f.      special, compensatory and punitive damages per Ky. common law.

g.      That Plaintiff receive from the Defendant both prejudgment interest and post judgment interest.

h.     That the Court enter an award sufficient to compensate the Plaintiff

for all attorneys' fees as allowed by KRS 344.450 and 2000e-5(k) and all

supporting case law and any other relevant statutes;

i.     Plaintiff's costs of the litigation and;

j.     Trial by jury on all issues so triable;

k.     That summons to the Defendant be issued immediately upon filing;

l.     Leave to amend the complaint as the proof develops.

m.     All other legal and equitable relief to which the Plaintiff may be

entitled under state and federal law and the facts in the case.

Respectfully Submitted this 5th day of March 2012;

> s/ Stephen M. Bowers
> KY BAR #85995
> Counsel for Barbara Bowers
> M.D.

Stephen M. Bowers, Attorney at Law
211 South College Street
PO Box 347
Franklin, KY 42135
Phone 270-598-7244
FAX 270-598-7254
smbowers@netzero.net