UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO. 5:12-CV-00034-JHM

BARBARA JEAN BOWERS                                           PLAINTIFF

V.

THE OPHTHALMOLOGY GROUP, LLP                                 DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant The Ophthalmology Group, LLP's motion to

dismiss first amended complaint [DN 18] and Plaintiff Barbara Jean Bowers' motion to disqualify

[DN 24].  Fully briefed, this matter is ripe for decision.  For the following reasons, the Court

**GRANTS** the Defendant's motion to dismiss and **DENIES** the Plaintiff's motion to disqualify as

moot.

I. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a

court "must construe the complaint in the light most favorable to plaintiff," League of United Latin

Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled

factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for

relief[,]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Under this standard, the plaintiff must provide

the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007).  A plaintiff satisfies this standard only when it "pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.  A complaint falls short if it pleads facts "merely consistent with a

defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678, 679.  Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999).  "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." Id. (quotation omitted). "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

## II. BACKGROUND

Plaintiff Barbara Jean Bowers ("Bowers") is an ophthalmologist in Paducah, Kentucky.  In 1999, she began working for The Ophthalmology Group, LLP ("Ophthalmology Group") also located in Paducah.  Bowers was asked by her male partners to buy into the partnership in 2002. She signed a partnership agreement and subsequently purchased a partnership interest.  A senior partner retired in 2005 and Bowers bought out his interest in the partnership, and also was paid a share when other partners bought in to Ophthalmology Group.  The most recent partnership

agreement was signed in August of 2009 between Bowers and six other male partners.

In November of 2009, Bowers informed Ophthalmology Group that she wanted to resign from the practice, but no final departure date was set. Following her notice, Bowers and her husband filed a non-consumer bankruptcy due to an unrelated failed business venture in early 2010. Around that same time, there was a dispute between Bowers and the partners of Ophthalmology Group over Bowers adding another doctor's office to Ophthalmology Group's insurance policy. The partners, excluding Bowers, met on March 4 of that year and agreed to expel Bowers from Ophthalmology Group.

Since Bowers' separation from Ophthalmology Group, Bowers and Ophthalmology Group have been engaged in litigation in the bankruptcy court. Bowers sought to halt her expulsion from Ophthalmology Group and made a claim for damages while Ophthalmology Group counterclaimed for breach of fiduciary duty. After the bankruptcy court abstained from exercising jurisdiction over state law claims, Ophthalmology Group filed suit in McCracken Circuit Court alleging claims of fiduciary breach of duty, declaratory judgment and wrongful use of civil process. Bowers counterclaimed alleging breach of fiduciary duty, abuse of process, injurious falsehood, tortious interference and intentional infliction of emotional distress. Bowers also filed charges of gender discrimination and retaliation with the Kentucky Commission on Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC"). The Kentucky Commission on Human Rights dismissed her claim without prejudice having determined Bowers was not an employee under the Kentucky Civil Rights Act. The EEOC also dismissed Bower's claim without prejudice finding no employer/employee relationship. Bowers filed this suit on April 23, 2012 alleging intentional gender discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and

Kentucky Civil Rights Act, K.R.S. § 344.010.

### III. DISCUSSION

Ophthalmology Group has filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6).  In Count I and Count IV of her Complaint, Bowers alleges that under Title VII, Ophthalmology Group unlawfully terminated her based on her gender and Ophthalmology Group's filing of a civil action in McCracken Court was in retaliation for her gender discrimination claims. 42 U.S.C. § 2000e.  Ophthalmology Group states that the federal claims under Title VII should be dismissed because Bowers was not an employee of Ophthalmology Group.

Both parties presented several matters outside the pleadings, thus, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d). Since the Court is treating the motion to dismiss as one for summary judgment, Bowers argues that the motion is premature.  Pursuant to Rule 56(d), Bowers' attorney submitted an affidavit stating that discovery conducted in prior proceedings was insufficient to fully defend this motion to dismiss. Fed. R. Civ. P. 56(d).  Particularly, Bowers' attorney states he needs to take depositions of partners on relevant issues such as inappropriate physician conduct, disparate treatment, control and power structure within Ophthalmology Group, and profit sharing. (Bower Aff. [DN 26-2].)

"When a motion for summary judgment is filed, the party opposing the motion may, by affidavit, explain why he is unable to present facts essential to justify the party's opposition to the motion."  Summers v. Leis, 368 F.3d 881, 887 (6th Cir. 2004).  As the motion for summary judgment is focused solely on the issue of  Bower's employment status, the Court is persuaded by Ophthalmology Group's argument that further discovery is not needed.  While the affidavit refers

4

generally to the need to discover issues related to the internal structure and control of Ophthalmology Group, it fails to state with "some precision the materials he hopes to obtain with further discover, and exactly how he expects those materials would help him in opposing summary judgment." Id. (citing Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996)). The Plaintiff has had ample opportunity for discovery on employment status issues both in the bankruptcy court and in the state court action. Furthermore, evidence to support Plaintiff's claim that she was an employee rather than a partner is not exclusively within the control of Ophthalmology Group. As aptly put by Ophthalmology Group, Dr. Bowers already knows whatever it is she needs to learn through further discovery about her employment status. Therefore, the Court finds that further discovery in the central issue is not necessary and Ophthalmology Group's motion for summary judgment is not premature.

### A. Title VII Gender Discrimination and Retaliation Claims

Under Title VII, it is "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2. The term employee "means an individual employed by an employer[.]" 42 U.S.C. § 2000e(f). Generally, "partners" who exercise a certain degree of control are considered employers, not employees under Title VII. See Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440, 446-48 (2003); Simpson v. Ernst & Young, 100 F.3d 436, 443 (6th Cir. 1996). "The determination of employment status is a mixed question of law and fact. Normally, a judge will be able to make this determination as a matter of law. However, where there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts . . . the question is to be resolved by the finder of fact in accordance with the appropriate rules of law."

5

Lilley v. BTM Corp., 958 F.2d 746, 750 n.1 (6th Cir. 1992); see also Simpson, 100 F.3d at 439.  The

Sixth Circuit applies a common law agency test in order to make the determination of whether a

party is an employee or a partner under federal discrimination statutes in which Congress has used

the term "employee."  Simpson, 100 F.3d at 443 (applying the common law agency doctrine to an

ADEA claim and ERISA claim); Johnson v. City of Saline 151, F.3d 564, 568 (6th Cir. 1998)

(applying the common law agency test to an ADA claim); Shah v. Deaconess Hosp. 355 F.3d 496,

499 (6th Cir. 2004) (applying the common law agency test to a Title VII claim and ADEA claim).

Cf. Clackamas, 538 U.S. at 449.  Several factors are analyzed under the common law agency test,

including:

> [T]he hiring party's right to control the manner and means by which the product is
> accomplished; the skill required by the hired party; the duration of the relationship
> between the parties; the hiring party's right to assign additional projects; the hired
> party's discretion over when and how to work; the method of payment; the hired
> party's role in hiring and paying assistants; whether the work is part of the hiring
> party's regular business; the hired party's employee benefits; and tax treatment of the
> hired party's compensation.

Shah, 355 F.3d at 499-500 (citing Simpson, 100 F.3d at 443; Nationwide Mut. Ins. Co. v. Darden,

503 U.S. 318, 322 (1992))[1].

Ophthalmology Group argues that as a matter of law, it is clear that Bowers was not an

---

[1] The Supreme Court held that "when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine."  Nationwide Mut. Ins. v. Darden, 503 U.S. 318, 322-23 (2003).  Both parties analyzed Bowers employment status under the Equal Employment Opportunity Commission's guidelines that were used by the Supreme Court in Clackamas, 538 U.S. at 449-50.  The Supreme Court was "persuaded by the EEOC's focus on the common-law touchstone of control[.]"  Id. at 449.  This Court acknowledges that the six Clackamas factors are not to be treated as an exhaustive list, but correlate with the common law factors analyzed by the Sixth Circuit. See Shah, 355 F.3d at 499-500 and Simpson, 100 F.3d at 443.

employee.  First, Ophthalmology Group points to the most recent partnership agreement of Ophthalmology Group, between the various partners.  The partnership agreement specifically refers to Bowers as a partner.  Second, Ophthalmology Group states that, as evidence of being a partner, Bowers shared the profits of the business.  Third, Ophthalmology Group argues that Bowers was not fired, but expelled from the group pursuant to the buy-out terms of the partnership agreement. Fourth, Ophthalmology Group claims that Bowers had the ability to control and influence the group, giving examples that she participated in partnership decisions regarding the purchase of equipment, the discharge of an employee, and the potential expulsion of another partner.  Fifth, Ophthalmology Group argues that Bowers supervised her own medical practice by setting her schedule and choosing which employees worked for her.  And lastly, Ophthalmology Group states that Bowers did not report to a superior and had the ability to ask for reports, financial records and other sensitive information suggesting her role as a co-owner of the group.

Acknowledging that whether a plaintiff qualifies as an employee is a mixed question of law and fact that normally a judge can make as a matter of law, Bowers states that this case presents genuine issues of fact and the question of whether she qualifies as an employee is not appropriate for a motion to dismiss.  Bowers disputes several things in Ophthalmology Group's motion to dismiss.  Bowers argues that she was a nominal partner and should be considered an employee for the purposes of Title VII.  Bowers states the title of partner is not controlling, and the Court should look to her lack of control in the partnership.  As evidence that she was an employee, Bowers contends that she was fired from the Ophthalmology Group, just as an employee would be fired since she did not participate in the partners' decision to expel her from the group.  She also points to her Complaint where she alleges that she had little to no control over salaries of employees,

bonuses, patient matters, scheduling of her own patients or control over her own practice.  Lastly, Bowers claims she did have to report to her superiors, and requests for additional partner meetings were continually ignored.

In Simpson v. Ernst & Young, the partner versus employee question was an issue of first impression in the Sixth Circuit. 100 F.3d 436.  In addition to the common law agency factors listed above, the Sixth Circuit, taking notice of other circuits that had previously looked at the partner versus employee question, found common law principles codified in the Uniform Partnership Act helpful in analyzing the "total bundle of partnership characteristics." Id. at 443 (quoting Wheeler v. Hurdman, 825 F.2d 257, 276 (10th Cir. 1987)).  Those factors included:

> [T]he right and duty to participate in management; the right and duty to act as an agent of other partners; exposure to liability; the fiduciary relationship among partners; use of the term "co-owners" to indicate each partner's "power of ultimate control;" participation in profits and losses; investment in the firm; partial ownership of firm assets; voting rights; the aggrieved individual's ability to control and operate the business; the extent to which the aggrieved individual's compensation was calculated as a percentage of the firm's profits; the extent of that individual's employment security; and other similar indicia of ownership.

Id. (citing Fountain v. Metcalf, Zima & Co., 925 F.2d 1398, 1400-01 (11th Cir. 1991); Wheeler v. Hurdman, 825 F.2d 257, 276 (10th Cir. 1987); Caruso v. Peat, Marwick, Mitchell & Co., 664 F.Supp. 144 (S.D.N.Y.1987)).  In Simpson, the plaintiff was determined to be an employee not a partner, even though he was given the title of partner.  The facts of the case revealed that two firms had merged to create a single, large accounting firm, and the merger required plaintiff and several other employees to execute documents that centralized the power to a small Management Committee of 10 to 14, which the plaintiff was not involved in.  The Sixth Circuit affirmed the trial court's decision agreeing that the plaintiff had no authority to direct or participate in the admission or discharge of partners, participate in the firm's profits and losses, participate in determining

8

compensation for partners and other personnel, or examine the books and records of the firm.  He "had few, if any, meaningful attributes of a partner." Id. at 442.

The facts in this case differ from those in Simpson.  While Bowers maintains that issues of material fact exist as to whether she is an employee under Title VII, there are certain facts that are not disputed.  Some of the undisputed facts can be found in the Complaint, in which Bowers states that she bought into the Ophthalmology Group in 2002; she made scheduling changes for personal matters; in November of 2009, Bowers expressed her desire to resign from the Ophthalmology Group and launch a new practice; and Bowers added additional practice sites to the Ophthalmology Group's insurance. (First Amended Complaint [DN 14].)  It is also undisputed that Bowers signed a partnership agreement and used a schedule K-1 form in reporting income, losses and dividends.  Under the partnership agreement Bowers' compensation was calculated as a percentage of the firm's profits; she was required to provide written notice of the intention to withdraw to the other partners at least one year prior to the date of withdrawal; she was under a duty to pay and satisfy her own personal debts; and she could be expelled from the partnership if she was declared bankrupt. (Amended and Restated Medical Partnership Agreement of The Ophthalmology Group, LLP [DN 7-2].)

Bower's primary argument is that she had less control in comparison to other partners in Ophthalmology Group in regards to salaries of employees, bonuses, patient flow and other common areas of the practice.  It appears Bowers disagreed with the other partners over the internal management of Ophthalmology Group.  However, one's status does not change from partner to employee simply because the partner is out-numbered and finds herself in a minority position among the other partners.  Contrary to her arguments here of no control, in her deposition, she stated she

participated in decisions regarding the purchase of equipment, she had a say in which employees of Ophthalmology Group worked with her, she was able to request and view sensitive financial information, and, in general, she referred to herself as a partner. (Bowers Dep. I, 80, 89-91, 97 [DN 7-10].)

Analyzing the undisputed facts under the common law agency test and the relevant UPA factors, the Court finds as a matter of law, Bowers was a partner in Ophthalmology Group, not an employee. As a partner of Ophthalmology Group, Bowers is not entitled to bring claims under Title VII and Counts I and IV must be dismissed.

**B. State Law Claims**

In her First Amended Complaint, Bowers also alleged in Count II that she was wrongfully terminated in violation of her contract and/or as proscribed by public policy under the Kentucky common law; in Count III, that she was unlawfully terminated because of her gender in violation of KRS 344.040; in Count V, Bowers was retaliated against for complaining about gender discrimination in violation of KRS 344.280; and in Count VI, Ophthalmology Group misappropriated her name for its commercial advantage. Ophthalmology Group contends that because the federal claims under Title VII fail as a matter of law, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, as follows: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 USC § 1367(c)(3). In Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988), the Supreme Court discussed the propriety of exercising supplemental jurisdiction over pendent state-law claims following its

10

decision in <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966).

> The Gibbs Court recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. For this reason, Gibbs emphasized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." Ibid. Under Gibbs, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. <u>Id.</u>, at 726-27.

<u>Carnegie-Mellon</u>, 484 U.S. at 349-50.

Given that the remaining claims are state-law claims, there is a pending state suit filed in McCracken Circuit Court, and this case is in its infancy, the Court finds that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. Therefore, the Court declines to exercise supplemental jurisdiction over Bowers' state-law claims. Accordingly, Bowers' pendent state-law claims are **DISMISSED** without prejudice.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendant Ophthalmology Group's motion to dismiss [DN 18] is **GRANTED** and Plaintiff's motion to disqualify [DN 24] is **DENIED** as moot.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 21, 2012

cc: counsel of record

11